■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ULEECE M. JACOBS, Also Known as PEACHES, Appellant.—Yesawich Jr., J. P. Appeal from a judgment of the County Court of Albany County (Turner, Jr., J.), rendered July 1, 1991, upon a verdict convicting defendant of the crimes of robbery in the first degree, robbery in the second degree (two counts) and assault in the second degree.

The victim's testimony established that he awakened early on the morning of September 1, 1990 to find defendant, someone he had known for many years, and Jinny Miller, a codefendant, in his apartment, allegedly because defendant wanted to borrow some money. When the victim told them that he had no money, Miller hit him from behind, and she and defendant removed cash and a winning Lotto ticket from his wallet and pockets. He further testified that when he awoke later in the morning, he was bleeding from the face and left ear over which he had a large bump, for which he later sought medical treatment. The victim related that he had tried to contact defendant and the latter's mother, in an attempt to get back the currency and other property of which he had been relieved; having no success he contacted the police, who arrested defendant.

Although there are some inconsistencies between the victim's version of the incident as initially recounted to the police and his testimony at trial, the jury nonetheless convicted defendant of the robbery and assault charges. Sentenced to prison terms of 5 to 15 years on the charge of robbery in the first degree, 4 to 12 years on the charges of robbery in the second degree, and 1 to 3 years on the assault charge, all to run concurrently, defendant appeals.

Defendant maintains there was insufficient proof to establish that he used or threatened to use physical force, an element of robbery in the first degree and robbery in the second degree (Penal Law § 160.15 [3]; § 160.10 [1], [2] [a]) (counts three, four and five), that he was aided by another person, an element of robbery in the second degree pursuant to Penal Law § 160.10 (1) (count four), or that the victim suffered physical injury, an element of robbery in the second degree pursuant to Penal Law § 160.10 (2) (a) and of assault in the second degree pursuant to Penal Law § 120.05 (2) (counts five and six). When the evidence is viewed in the light most favorable to the People, however, the proof adequately supports each of the challenged findings.

The victim testified that as a result of being struck on the

head, he felt a "sharp pain", was rendered unconscious and endured a throbbing in the head which became worse over time; the jury could have found this pain alone sufficiently substantial to constitute physical injury, as defined by Penal Law § 10.00 (9) (see, People v Thompkins, 97 AD2d 593). Moreover, when the cuts, swelling and scarring which the victim described and exhibited to the jury—he also sustained a cyst-like knot above his left ear which was clotted with blood and eventually had to be lanced and drained—are considered, there is reason to find that the victim suffered physical injury (see, People v Coward, 100 AD2d 628).

Although defendant himself did not apparently hit the victim, his actions in providing distraction beforehand and removing money from the victim's pockets thereafter afford justification for the jury to conclude that he acted in concert with the codefendant and aided in robbing and causing injury to the victim (see, People v Crutchfield, 149 AD2d 857, 858, lv denied 74 NY2d 738). There is thus a sufficient predicate in the record for a determination that defendant is guilty as an accomplice to the crimes of robbery and assault (see, Penal Law § 20.00).

Neither is there merit to defendant's contention that the bottle which the jury could have found was used to strike the victim was not a dangerous instrument. The physical injuries and scarring suffered by the victim provide satisfactory grounds for the jury's conclusion that a bottle used in this manner is a "dangerous instrument" within the meaning of the Penal Law (see, People v Carter, 53 NY2d 113, 116).

It is also claimed that because County Court refused to give a curative instruction regarding a reference to defendant's criminal record, and declined to allow a defense witness to give an opinion as to whether the victim was intoxicated later in the morning on the day of the incident, defendant was denied a fair trial. We do not agree.

During the People's direct examination, the victim, in explaining why he had waited four days to report the occurrence to the police, stated that he "knew that [defendant] had priors, you know, a record, and I was trying—[objection]—to get my personal belongings back without going through the authorities". Defense counsel again objected, at which point an off-the-record bench conference was held, after which the direct examination continued; no further objections were interposed nor was a mistrial sought.

Ordinarily, this sort of brief reference would be neutralized

by a curative instruction to the jury (see, People v Nagi, 153 AD2d 964, 965). Here, though, no such instruction was requested or given and no exceptions to County Court's charge were registered by defense counsel. From this we conclude, not unfairly we think, that the defense was satisfied with the result of the bench conference (see, People v Williams, 46 NY2d 1070, 1071); that being the case, it ill-befits defendant to now argue that in failing to give a curative instruction the court committed reversible error. Moreover, this statement was probative as to the reason why the victim opted not to contact the police immediately after the attack (see, People v Ventimiglia, 52 NY2d 350, 359), was not cumulative (compare, People v Blanchard, 83 AD2d 905, 906) and was not persistently emphasized by the prosecutor (compare, People v Mullin, 41 NY2d 475, 479-480); a minor transgression such as this does not deprive a defendant of a fair trial (see, People v Riess, 168 AD2d 787, 788-789, lv denied 78 NY2d 925).

Finally, County Court's decision precluding a defense witness from offering an opinion as to the victim's state of intoxication several hours after the assault—presumably to demonstrate that the victim's memory or perceptions of the attack were faulty—was an acceptable exercise of discretion. The witness had already testified that when he entered the victim's apartment that morning, there were many beer cans lying about and the victim was drinking gin from a bottle. While a court may permit an opinion about a person's intoxicated state to be given by a lay witness (see, Felska v New York Cent. & Hudson Riv. R. R. Co., 152 NY 339, 344), it does not necessarily follow that such an opinion must be allowed, particularly where, as here, the witness testified as to the underlying facts and the jurors may form their own opinions therefrom (see, Radosh v Shipstad, 20 NY2d 504, 508). In any event, given that the victim's state several hours after the incident bears little, if any, relevance to his condition at the time of the attack, County Court's ruling cannot be said to have been an abuse of discretion (see, supra, at 508; Lipp v Saks, 129 AD2d 681, 683).

Levine, Crew III, Mahoney and Harvey, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Albany County for further proceedings pursuant to CPL 460.50 (5).